# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| CITY OF MIAMI FIRE FIGHTERS' AND POLICE OFFICERS' RETIREMENT TRUST, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   vs.<br><br>PRIMO BRANDS CORPORATION, ROBBERT RIETBROEK, DAVID HASS, JASON AUSHER, C. DEAN METROPOULOS, KURTIS BARKER, BRITTA BOMHARD, SUSAN E. CATES, MICHAEL J. CRAMER, ERIC J. FOSS, JERRY FOWDEN, TONY W. LEE, BILLY D. PRIM, KIMBERLY REED, JOSEPH ROSENBERG, ALLISON SPECTOR, STEVEN P. STANBROOK, MORGAN STANLEY & CO. LLC, BOFA SECURITIES, INC., J.P. MORGAN SECURITIES LLC, RBC CAPITAL MARKETS, LLC, BARCLAYS CAPITAL INC., BMO CAPITAL MARKETS CORP., DEUTSCHE BANK SECURITIES INC., JEFFERIES LLC, GOLDMAN SACHS & CO. LLC, MIZUHO SECURITIES USA LLC, TD SECURITIES (USA) LLC, TRUIST SECURITIES, INC., WILLIAM BLAIR & COMPANY, L.L.C., DREXEL HAMILTON, LLC, LOOP CAPITAL MARKETS LLC, and TRITON WATER PARENT HOLDINGS, LP,<br><br>            Defendants. | Case No.: 8:25-cv-03328-JLB-AAS<br><br>Hon. John L. Badalamenti<br><br>Hon. Amanda Arnold Sansone<br><br><u>CLASS ACTION</u><br><br>**MOTION AND BRIEF IN SUPPORT OF THE MOTION OF THE FLORIDA SAFETY FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**<br><br>ORAL ARGUMENT REQUESTED |

**MOTION**

City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO"), City of Orlando Firefighters' Pension Fund ("Orlando Firefighters"), and City of Orlando Police Officers' Pension Fund ("Orlando Police," and together with Orlando Firefighters, "Orlando," and collectively with Miami FIPO, the "Florida Safety Funds") hereby move this Court pursuant to Section 27(a)(3)(B) of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3)(B) (the "Securities Act"), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B) ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") for an Order: (1) appointing the Florida Safety Funds as Lead Plaintiff; (2) approving their selection of Saxena White P.A. ("Saxena White") to serve as Lead Counsel for the Class (defined herein); and (3) granting any such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that the Florida Safety Funds are the "most adequate plaintiff" pursuant to the PSLRA. Specifically, the Florida Safety Funds believe they have the "largest financial interest" in the relief sought by a class (the "Class") of: (1) all persons or entities that purchased Primo Brands Corporation ("Primo Brands" or the "Company") common stock pursuant, or traceable, or both, to the SPO Materials (as defined herein) issued in connection with Primo Brands' March 2025 secondary public offering (the "SPO"); and (2) all persons who

1

purchased or otherwise acquired (i) the common stock of Primo Water Corporation ("Primo Water") between June 17, 2024 through November 8, 2024, inclusive, and/or (ii) the common stock of Primo Brands between November 11, 2024 through November 6, 2025, inclusive (the "Class Period"). The Florida Safety Funds also satisfy the applicable requirements in Rule 23 of the Federal Rules of Civil Procedure because their claims are typical of other Class members' claims and they will fairly and adequately represent the interests of the Class. The Florida Safety Funds' Motion is based upon the accompanying Memorandum of Law in support thereof, the Declaration of Lester R. Hooker ("Hooker Decl.") in support thereof and the exhibits attached thereto, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court. The Florida Safety Funds respectfully request oral argument at the Court's convenience to address any questions the Court may have, because this Motion raises complex issues and claims pursuant to the Securities Act, the Exchange Act, and the PSLRA.

WHEREFORE, the Florida Safety Funds respectfully request that the Court: (1) appoint the Florida Safety Funds as Lead Plaintiff; (2) approve the Florida Safety Funds' selection of Saxena White as Lead Counsel for the Class; and (3) grant such other relief as the Court may deem just and proper.

2

## LOCAL RULE 3.01(g) CERTIFICATE

Counsel for the Florida Safety Funds is aware of the directive in Local Rule 3.01(g) requiring that a moving party confer with counsel for the opposing party in a good-faith effort to resolve the issues raised by the motion.  However, the lead plaintiff appointment process imposed by the PSLRA, as described herein, makes this practice impossible.  While all potential parties to the action should be aware of the filing date, counsel for the Florida Safety Funds cannot determine who else may move for appointment as Lead Plaintiff at this time.  Accordingly, counsel for the Florida Safety Funds request leave from the meet and confer requirement of Local Rule 3.01(g) with respect to the filing of this motion.

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ...................................................................2

II.   FACTUAL BACKGROUND.....................................................................4

III.  ARGUMENT............................................................................................6

    A.    The Florida Safety Funds Should Be Appointed Lead Plaintiff..........6

        1.    The PSLRA Standard for Appointing Lead Plaintiff .................6

        2.    The Florida Safety Funds Are the "Most Adequate Plaintiff"...................................................................................8

            a.    The Florida Safety Funds Have Satisfied the PSLRA's Procedural Requirements .................................8

            b.    The Florida Safety Funds Have the Largest Financial Interest in the Relief Sought by the Class ........9

            c.    The Florida Safety Funds Satisfy Rule 23's Typicality and Adequacy Requirements ........................10

                i.  The Florida Safety Funds' Claims Are Typical of Those of the Class .................................................11

                ii. The Florida Safety Funds Will Fairly and Adequately Protect the Interests of the Class............12

            d.    The Florida Safety Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA .................13

    B.    The Court Should Approve the Florida Safety Funds' Selection of Lead Counsel................................................................................16

IV.   CONCLUSION.......................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Eastwood Enters., LLC v. Farha*,
 No. 07-cv-1940, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008).................... 10, 12

*Hom v. Vale, S.A.*,
 No. 15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016).....................9

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)...............................................................................14

*Molema v. Bio-One Corp.*,
 No. 05-cv-1859, 2006 WL 1733859 (M.D. Fla. June 20, 2006) .........................16

*Plymouth Cnty. Ret. Sys. v. Carter's Inc.*,
 No. 08-cv-2940, 2009 WL 692141 (N.D. Ga. Mar. 13, 2009)............................11

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
 No. 07-cv-81038, 2008 WL 1943955 (S.D. Fla. May 2, 2008) ................... 16, 17

*Shelby Township. Police & Fire Ret. Sys. v. Celsius Holdings, Inc.*,
 No. 24-cv-81472, 2025 WL 671395 (S.D. Fla. Mar. 3, 2025) .................... passim

*Vincelli v. Nat'l Home Health Care Corp.*,
 112 F. Supp. 2d 1309 (M.D. Fla. 2000)...............................................................14

**Statutes**

15 U.S.C. § 77k....................................................................................................4
15 U.S.C. § 77*l*....................................................................................................4
15 U.S.C. § 77o....................................................................................................4
15 U.S.C. § 77z-1(a) ..................................................................................... *passim*
15 U.S.C. § 78j(b) ................................................................................................4
15 U.S.C. § 78t(a) ................................................................................................4
15 U.S.C. § 78u-4(a) ............................................................................................1

ii

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

## MEMORANDUM OF LAW

The Florida Safety Funds respectfully submit this brief pursuant to Section 27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, in support of their Motion for an order: (1) appointing the Florida Safety Funds as Lead Plaintiff in the above-captioned action (the "Action")[1] for the Class of: (1) all persons or entities that purchased Primo Brands common stock pursuant, or traceable, or both, to the SPO Materials issued in connection with Primo Brands' March 2025 SPO; and (2) all persons who purchased or otherwise acquired (i) the common stock of Primo Water between June 17, 2024 through November 8, 2024, inclusive, and/or (ii) the common stock of Primo Brands between November 11, 2024 through November 6, 2025, inclusive (the Class Period); (2) approving their selection of Saxena White as Lead Counsel for the Class; and (3) granting any such other and further relief as the Court may deem just and proper.

---

[1] On November 12, 2025, a similar securities action was filed in the U.S. District Court for the District of Connecticut. *See Rosenblum v. Primo Brands Corp.*, No. 3:25-cv-01902 (D. Conn.) (the "*Rosenblum* Action") (asserting substantially similar claims under the Exchange Act). On January 7, 2026, the plaintiff in the *Rosenblum* Action filed a notice of voluntary dismissal without prejudice. *See Rosenblum* Action, ECF No. 10. On January 8, 2026, the *Rosenblum* court entered an order directing the clerk to close the case. *See id.* ECF No. 11.

1

## I.   PRELIMINARY STATEMENT

The Florida Safety Funds—sophisticated institutional investors that collectively oversee more than $2.9 billion in assets on behalf of their beneficiaries and have significant lead plaintiff experience in securities litigation—respectfully submit that they should be appointed Lead Plaintiff on behalf of the Class.  The Florida Safety Funds satisfy all prerequisites for lead plaintiff appointment.  As detailed below, the Florida Safety Funds incurred a loss of $573,290, as calculated under the prevailing last-in-first-out ("LIFO") loss calculation method, as a result of their purchases of Primo Water and Primo Brands common stock during the Class Period, and a loss of $65,151 as a result of Miami FIPO's purchases of Primo Brands common stock pursuant and traceable to the SPO Materials issued in connection with the March 2025 SPO.  Accordingly, the Florida Safety Funds have a powerful economic interest in directing the litigation and recovering the losses suffered by the Class—an interest believed to be greater than that of any qualified movant.

The Florida Safety Funds also meet the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of those of absent Class members, and they will fairly and adequately represent the interests of the Class.  15 U.S.C. § 77z-1(a)(3)(B)(iii).[2]  The

---

[2] Because the relevant provisions in the Exchange Act and Securities Act are identical, this memorandum cites solely to the Securities Act.

2

Florida Safety Funds are familiar with the obligations and responsibilities of the lead plaintiff, are not subject to any unique defenses, and have the incentive, ability, and experience to effectively supervise the prosecution of the Action in the best interests of the Class.  Indeed, the Florida Safety Funds are precisely the type of institutional investors whose participation in securities class actions the PSLRA was meant to foster, as described by the PSLRA's legislative history.

In addition, as set forth in greater detail in their Joint Declaration submitted herewith, the Florida Safety Funds understand the Lead Plaintiff's obligations under the PSLRA and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action.  *See* Joint Declaration, Hooker Decl., Ex. C.  In short, the Florida Safety Funds are the "most adequate plaintiff" and should be appointed Lead Plaintiff.

The Florida Safety Funds also respectfully request that the Court approve their selection of Lead Counsel for the Class.  Proposed Lead Counsel Saxena White has substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this District and throughout the nation. Additionally, Saxena White investigated and filed the Action on behalf of Miami FIPO against Defendants.

3

## II.   FACTUAL BACKGROUND

The Action pending before the Court is brought against Primo Brands and other defendants (collectively, "Defendants") for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77*l*(a)(2), and 77o, Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. 15 U.S.C. §§ 78j(b), 78t(a), and the U.S. Securities and Exchange Act Commission ("SEC") Rule 10b-5 promulgated thereunder

Primo Brands[3] provides branded beverages.  Prior to the formation of Primo Brands, BlueTriton Brands, Inc. ("BlueTriton") had a portfolio of national and regional water brands, while also operating a direct delivery business dubbed "ReadyRefresh."  At this time, Primo Water was a water solutions company.  On November 8, 2024, the merger between Primo Water and BlueTriton closed (the "Merger").

On or about March 10, 2025, Primo Brands conducted the SPO, in which over 51 million shares were offered to the public at $29.50 per share.  The SPO was conducted pursuant to several documents filed by Primo Brands and other Defendants, including (i) a March 5, 2025 registration statement on Form S-1/A,

---

[3] Primo Brands is headquartered in Tampa, Florida, and Stamford, Connecticut. The Company's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "PRMB."  Prior to the formation of Primo Brands, Primo Water traded on the NYSE under the ticker symbol "PRMW."

4

which was declared effective by the SEC on March 10, 2025 (the "Registration Statement"), and (ii) a March 10, 2025 preliminary prospectus supplement and a March 11, 2025 final prospectus supplement filed pursuant to Rule 424(b)(3), which forms part of the Registration Statement (the "Prospectus" and, together with the Registration Statement and attendant materials filed or published with these forms, the "SPO Materials").

The Action alleges that, throughout the Class Period and in the SPO Materials, Defendants misled investors about Primo Brands' prospects as a combined company and the Company's integration progress, by failing to disclose that: (1) from the outset of the Merger, Primo Brands' direct delivery business, including ReadyRefresh, experienced serious operational disruptions that prevented the Company from executing the most basic operational tasks; (2) Primo Brands experienced significant, ongoing, self-inflicted execution challenges integrating Primo Water and BlueTriton; (3) the disruptions in the direct delivery business and execution challenges imperiled Primo Brands' integration plan; (4) in turn, Primo Brands was unable to effectively serve its customers, particularly in its direct delivery business; and (5) due to the foregoing, Primo Brands' business and operations were negatively impacted.

The truth began to emerge on August 7, 2025, when Primo Brands reported second quarter 2025 revenue and adjusted diluted earnings per share (EPS) that fell

5

short of analysts' estimates. The Company also reduced its full year 2025 net sales growth guidance and full year 2025 adjusted earnings before interest, taxes, depreciation, and amortization ("EBITDA") guidance. Primo Brands attributed the poor second quarter results and reduced guidance to, among other factors, "service issues during the accelerated integration process." On this news, Primo Brands stock fell $2.41 per share, or about 9%, to close at $24.00 per share on August 7, 2025.

The truth fully emerged on November 6, 2025. That day, Primo Brands disclosed another full year 2025 sales growth and adjusted EBITDA guidance reduction and the departure of its Chief Executive Officer Robbert Rietbroek. The Company further revealed to investors that the direct delivery disruptions were "self-inflicted," with "the ultimate output" being "customer service issues." On this news, Primo Brands stock fell $4.96 per share, or more than 21%, to close at $17.70 per share on November 6, 2025.

## III. ARGUMENT

### A. The Florida Safety Funds Should Be Appointed Lead Plaintiff

#### 1. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Securities Act and Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 77z-1(a)(I); *see also* 15 U.S.C. § 77z-1(a)(3)(B). First,

6

Section 27(a)(3)(A)(i) of the Securities Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 77z-1(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 77z-1(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is

7

subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

### 2. The Florida Safety Funds Are the "Most Adequate Plaintiff"

The Florida Safety Funds respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

### a. The Florida Safety Funds Have Satisfied the PSLRA's Procedural Requirements

Pursuant to the PSLRA, on November 12, 2025, the *Rosenblum* Action was filed, and counsel for the plaintiff in the action published notice on *BusinessWire* alerting investors to the pendency of the action and informing them of the 60-day deadline to seek appointment as Lead Plaintiff, which is January 12, 2025. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i); *see also* Hooker Decl., Ex. D. On December 5, 2025, Miami FIPO filed the Action in this District, asserting substantially similar claims under the Exchange Act and additional claims under the Securities Act relating to misstatements and omissions made in connection with the SPO. That same day, counsel for Miami FIPO, Saxena White, published notice on *GlobeNewswire* alerting investors to the pendency of the Action and the additional claims asserted

8

in the Action.[4]  *See* Notice, Hooker Decl., Ex. D.  Therefore, the Florida Safety Funds' motion in timely.

### b.       The Florida Safety Funds Have the Largest Financial Interest in the Relief Sought by the Class

The Florida Safety Funds should be appointed Lead Plaintiff because they have "the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb).  The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *see also Shelby Township. Police & Fire Ret. Sys. v. Celsius Holdings, Inc.*, No. 24-cv-81472, 2025 WL 671395, at *2 (S.D. Fla. Mar. 3, 2025).

As evidenced in their certifications and loss chart, the Florida Safety Funds suffered a loss of $573,290, as calculated on a LIFO basis, on their purchases of common stock during the Class Period, and a loss of $65,151 as a result of Miami FIPO's purchases of Primo Brands common stock pursuant and traceable to the SPO

---

[4] The filing of a subsequent action asserting substantially similar claims does not alter the deadline to seek appointment as lead plaintiff. *See Hom v. Vale, S.A.*, No. 15-cv-9539-GHW, 2016 WL 880201, at *1 (S.D.N.Y. Mar. 7, 2016) (holding that "the PSLRA requires that notice be published in *only* the first filed action where more than one action is filed 'on behalf of a class asserting substantially the same claim or claims.'") (emphasis in original).  Likewise, the fact that the *Rosenblum* Action was subsequently voluntarily dismissed does not alter the deadline.

Materials issued in connection with the March 2025 SPO. *See* Hooker Decl., Ex. B; *see also Celsius*, 2025 WL 671395 at *3 (finding movant that suffered the largest LIFO loss had the largest financial interest); *Eastwood Enters., LLC v. Farha*, No. 07-cv-1940, 2008 WL 687351, at *1 (M.D. Fla. Mar. 11, 2008). The Florida Safety Funds are unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the Action and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, the Florida Safety Funds have the largest financial interest of any qualified movant and are the presumptive "most adequate plaintiff" because they also satisfy the applicable Rule 23 requirements. 15 U.S.C. § 77z-1(a)(3)(B)(iii).

**c.  The Florida Safety Funds Satisfy Rule 23's Typicality and Adequacy Requirements**

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at this stage of the litigation, a lead plaintiff movant need only make a

10

"prima facie showing" of typicality and adequacy under Rule 23. *Celsius*, 2025 WL 671395 at *3.

### i. The Florida Safety Funds' Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is present when the lead plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of other class members." *Plymouth Cnty. Ret. Sys. v. Carter's Inc.*, No. 08-cv-2940, 2009 WL 692141, at *2 (N.D. Ga. Mar. 13, 2009); *see also Celsius*, 2025 WL 671395, at *2 (finding movant's claims typical of the class because movant purchased common stock during the class period and suffered damages as a result).

The typicality requirement is satisfied here because the Florida Safety Funds, which are not subject to any unique or special defenses, seek the same relief and advance the same legal theories as other Class members. Like all members of the Class, the Florida Safety Funds: (1) purchased Primo Water and/or Primo Brands common stock during the Class Period, and pursuant and traceable to the SPO Materials issued in connection with the March 2025 SPO; (2) at prices that were allegedly inflated due to Defendants' materially false or misleading statements or omissions; and (3) were damaged thereby when the truth was revealed. As such, the

11

Florida Safety Funds' claims are typical of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### ii. The Florida Safety Funds Will Fairly and Adequately Protect the Interests of the Class

Pursuant to Rule 23(a)(4), a representative party must demonstrate that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). "This inquiry rests on two bases: common interests between the representative and the class, and the willingness and ability to vigorously prosecute the action." *Celsius*, 2025 WL 671395, at *3; *see also Farha*, 2008 WL 687351, at *1 (discussing the adequacy requirement under Rule 23).

The Florida Safety Funds will fairly and adequately represent the interests of the proposed Class.  The Florida Safety Funds' interests are aligned with those of the other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflict of interest or other antagonism between the Florida Safety Funds and the other Class members.  Moreover, as institutional investors with a substantial financial interest in the litigation, the Florida Safety Funds have the resources, experience, and incentive to faithfully represent the Class and vigorously prosecute the litigation.  *See id*. (appointing a group of pension funds that were "sophisticated institutional investors with a real financial interest in the litigation").  Indeed, the Florida Safety Funds have substantial experience in successfully prosecuting securities actions.   Miami FIPO's experience in

12

undertaking a leadership role in securities class actions includes *In re Quality Systems, Inc. Securities Litigation*, No. 13-cv-1818 (C.D. Cal.) (securing $19 million recovery) and *In re Penn West Petroleum Ltd. Securities Litigation*, No. 14-cv-6046 (S.D.N.Y.) (achieving $19.8 million recovery).  Additionally, the Florida Safety Funds are serving as lead plaintiff together with other pensions funds, and Saxena White serving as co-lead counsel, in *Operating Engineers Construction Industry and Miscellaneous Pension Fund v. Neogen Corp.*, No. 25-cv-802 (W.D. Mich.).

The Florida Safety Funds have further demonstrated their adequacy through their selection of Saxena White as proposed Lead Counsel.  As discussed below, Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively prosecute complex securities class actions and other forms of shareholder litigation. Accordingly, the Florida Safety Funds satisfy the adequacy requirement.

**d.**   **The Florida Safety Funds Are Precisely the Type of Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the requirements of Rule 23, as large, sophisticated institutional investors, the Florida Safety Funds are the very type of investors Congress sought to encourage to assume a more prominent role in securities litigation through enactment of the PSLRA.  As Congress noted in its PSLRA Statement of Managers Report, the PSLRA was designed "'to increase the likelihood that institutional investors will serve as lead plaintiffs[,]'" in part because

13

"'[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737 (1995)); *see Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1314 (M.D. Fla. 2000) ("The PSLRA ensure[s] that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation[.]") (internal quotation marks omitted and alterations in the original).

As described in their Joint Declaration, the Florida Safety Funds have the ability, resources, and incentive to vigorously represent the Class and supervise Class counsel. *See* Hooker Decl., Ex. C ¶¶ 7-8, 14. The Florida Safety Funds further detail in the Joint Declaration their backgrounds and their significant relevant experience in selecting and overseeing counsel in securities class actions. *See id.* ¶¶ 2-5, 13. The Florida Safety Funds also understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary." Hooker Decl., Ex. A.

The Joint Declaration also explains how and why the Florida Safety Funds decided to collaborate in this litigation. Specifically, before seeking Lead Plaintiff

14

appointment, the Florida Safety Funds considered the merits of the claims against Defendants, their losses caused by Defendants' conduct, and their proposed litigation strategy. *See* Hooker Decl., Ex. C ¶¶ 8-9, 11. Recognizing that this litigation will be best guided by institutional investors that are familiar with and/or understand the requirements attendant upon a fiduciary, the Florida Safety Funds each independently determined to join together to seek appointment as Lead Plaintiff. The decision of the Florida Safety Funds to join together was based on, among other things, their roles as fiduciaries to their respective members, their shared goals and interests in maximizing fund assets, and their experience serving as representative plaintiffs as part of small groups in securities litigation, and their comprehensive and complementary investments in Primo Waters and/or Primo Brands common stock, including Primo Brands common stock purchased pursuant and traceable to the SPO Materials issued in connection with the March 2025 SPO. *See id.* ¶ 8. Based on their understanding that working together would allow for the sharing of experiences and resources, the Florida Safety Funds believe that partnering will add substantial value to the prosecution of this Action and will benefit the Class. *See id.* ¶ 14.

As also set forth in their Joint Declaration, the Florida Safety Funds have demonstrated their commitment to working cohesively together in the prosecution of this Action. *See id.* ¶¶ 12-13. The Joint Declaration further details the steps that

15

the Florida Safety Funds have already taken (and will continue to take) to ensure the vigorous prosecution of this Action and to oversee counsel. *See id.* ¶¶ 15-17.

In sum, the Florida Safety Funds have demonstrated their willingness, resources, and commitment to working closely with one another to supervise proposed Lead Counsel for the Class and obtain the best possible recovery for the Class. Thus, the Class would benefit from the Florida Safety Funds' leadership of this litigation.

### B. The Court Should Approve the Florida Safety Funds' Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); *see also Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, No. 07-cv-81038, 2008 WL 1943955, at *3 (S.D. Fla. May 2, 2008) ("where court found resume of proposed firm demonstrated that it was 'well-versed in the vagaries of securities class action litigation' court deemed class would be 'well-represented' by the firm and recommended their appointment") (citing *Molema v. Bio-One Corp.*, No. 05-cv-1859, 2006 WL 1733859, at *3 (M.D. Fla. June 20, 2006)). Because the Florida Safety Funds have selected counsel with extensive experience litigating securities fraud class actions, and the resources

16

necessary to vigorously prosecute this Action and obtain the best recovery possible for the Class, their selection should be approved.

Saxena White, which is headquartered in Boca Raton, Florida, has achieved substantial recoveries on behalf of investor classes when serving as lead counsel in securities class actions in this District and throughout the country. *See* Hooker Decl., Ex. E (Firm resume of Saxena White). Saxena White's track record in securities litigation includes: the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.); the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.); the $65 million recovery in *Black v. Snap Inc.*, No. 21-cv-8892 (C.D. Cal.) (pending final approval); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Companies Inc.*, No. 18-cv-871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re*

17

*Perrigo Company plc Securities Litigation*, No. 19-cv-70 (S.D.N.Y.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 21-cv-444 (E.D. Va.); the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.); and the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.).

Moreover, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.). Saxena White also achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-04534 (S.D. Ohio). Thus, the Court may rest assured that the Class will receive the highest caliber of representation from the Florida Safety Funds' chosen counsel.

## IV.   CONCLUSION

For the foregoing reasons, the Florida Safety Funds respectfully request that the Court: (1) appoint the Florida Safety Funds to serve as Lead Plaintiff for the

18

Class; and (2) approve the Florida Safety Funds' selection of Saxena White to serve

as Lead Counsel for the Class; and (3) granting any such other and further relief as

the Court may deem just and proper.

Dated: January 12, 2026                          Respectfully submitted,


                                                 **SAXENA WHITE P.A.**

                                                 By: /s/ *Lester R. Hooker*
                                                 Maya Saxena
                                                 Lester R. Hooker
                                                 7777 Glades Road, Suite 300
                                                 Boca Raton, FL 33434
                                                 Tel.: (561) 394-3399
                                                 Fax: (561) 394-3382
                                                 msaxena@saxenawhite.com
                                                 lhooker@saxenawhite.com

                                                 Marco A. Dueñas (admission forthcoming)
                                                 10 Bank Street, Suite 882
                                                 White Plains, NY 10606
                                                 Tel.: (914) 437-8551
                                                 Fax: (888) 216-2220
                                                 mduenas@saxenawhite.com

                                                 *Counsel for Proposed Lead Plaintiff the*
                                                 *Florida Safety Funds, and Proposed Lead*
                                                 *Counsel for the Class*

                                                 **KLAUSNER KAUFMAN JENSEN**
                                                 **& LEVINSON**
                                                 Robert D. Klausner
                                                 7080 NW 4th Street
                                                 Plantation, Florida 33317
                                                 Tel.: (954) 916-1202
                                                 Fax: (954) 916-1232

19

bob@robertdklausner.com

*Additional Counsel for Proposed Lead*
*Plaintiff the Florida Safety Funds*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ Lester R. Hooker*
Lester R. Hooker

21